UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
VEERAPPAN SUBRAMANIAN,

                               Plaintiff,

               -against-

LUPIN INC.,

                               Defendant.
----------------------------------------------------------------X

**OPINION & ORDER ON MOTION TO COMPEL**

**17-CV-5040 (RA) (KHP)**

KATHARINE H. PARKER, U.S. MAGISTRATE JUDGE

       This case arises out of Defendant/Counterclaim Plaintiff Lupin Inc.'s ("Lupin") 2016 acquisition of two pharmaceutical companies—Gavis Pharmaceuticals, LLC ("Gavis) and Novel Laboratories, Inc. ("Novel," and collectively with Gavis, the "Companies")—from Plaintiff/Counterclaim Defendants Veerappan and Govindammal Subramanian, VGS Pharma, LLC, and Mendham Holdings, LLC, (collectively, the "Sellers").[1] Sellers seek release of the remainder of the monies owed for the purchase of the entities. Pursuant to the Purchase and Sale Agreement, the purchase funds were held in escrow and scheduled to be released on certain dates after the close of the transaction. Sellers contend that Lupin breached the Purchase and Sale Agreement by "wrongfully inventing" untimely claims for indemnification that exceed the amounts remaining in the escrow account, thereby depriving Sellers of the full sale price.[2] Lupin filed a counterclaim asserting, *inter alia*, that Sellers created a fraudulent

---

[1] The transaction also included the purchase of VGS Holdings, Inc. and one share of Novel Clinical Research (India) Pvt. Ltd.

[2] Lupin sought indemnification for a lawsuit brought by the State of Texas against Lupin and others alleging violations of the state Medicaid Fraud Prevention Act in connection with the marketing and sale of certain drugs that occurred under Sellers' watch. Lupin also sought indemnification for a lawsuit filed in New Jersey by another pharmaceutical company named Euticals, SpA, alleging that Gavis and/or Novel had infringed on its patents for certain drugs.

scheme to sell a particular pharmaceutical product outside their ordinary course of business to enhance their sales figures in an effort to meet the financial projections provided to Lupin in advance of the sale and in breach of representations and warranties in the Purchase and Sale Agreement.

Lupin issued subpoenas to three individuals previously employed by the Companies—Tammy McIntyre Stefanovic, Rebecca Wilczek, and Adelfa Victoriano. Ms. Stefanovic served as Gavis's president; Ms. Wilczek and Ms. Victoriano worked in sales and customer service roles for the Companies. All three women remained employed by the respective entities for a time after the sale but have since separated from the Companies. Mses. Stefanovic and Wilczek are eligible for further payments from the escrowed funds at issue in this case should Sellers succeed on their claims and in defeating Lupin's counterclaims.

After Lupin subpoenaed these witnesses, counsel for Sellers agreed to pay for independent counsel for its former employees to protect against conflicts of interest and waiver of privilege given that these individuals also worked for Lupin after the sale. To further protect privilege, Sellers and the witnesses entered into a joint defense agreement on the theory that Sellers and at least two of the witnesses shared a common interest in obtaining release of the escrowed funds from Lupin.

Sellers' counsel communicated with the witnesses' counsel in advance of their depositions to provide their counsel with background about the case and "to learn facts related to this legal action and which the former employee[s] [were] aware of as a result of [their] employment" by the Companies (i.e., Sellers). [ECF No. 168-7.] The focus of the communications, according to Sellers' counsel, was to "investigate facts relating to Lupin's

allegation that the Sellers caused the Companies to engage in non-ordinary course sales in order to meet projections made to Lupin in connection with the sale." [ECF. No. 172.] Sellers' counsel also selected certain documents to provide to the witnesses' counsel in connection with its investigation.

Lupin then requested all documents reflecting communications between Sellers and the witnesses pertaining to this litigation and all documents provided by Sellers to the witnesses. Sellers objected on the grounds that the requested information is protected by the attorney-client privilege, common interest doctrine, and work product doctrine. Lupin has now moved to compel production of this information. [*See* ECF No. 168.]

## DISCUSSION

### *Attorney-Client Privilege*

The attorney-client privilege protects communications between client and counsel that are made for the purpose of obtaining or providing legal advice and intended to be and in fact kept confidential.[3] *Sokol v. Wyeth, Inc.,* No. 07 Civ. 8442, 2008 WL 3166662, at *5 (S.D.N.Y. Aug.4, 2008) ("The privilege . . . shields from discovery advice given by the attorney as well as communications from the client to the attorney."); *see also* N.Y.C.P.L.R. § 4503(a)(1); *Rossi v. Blue Cross & Blue Shield of Greater N.Y.,* 73 N.Y.2d 588, 592-93 (1989). As the United States Supreme Court explained in *Upjohn Co. v. United States*, the privilege encourages full and frank communications between a client and counsel, which in turn promotes an understanding of and compliance with the law and the administration of justice. 449 U.S. 383, 389 (1981). The

---

[3] New York law regarding the attorney-client privilege and the common interest doctrine substantially follows federal law, so the Court cites both. *See Gulf Islands Leasing, Inc., v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 471 (S.D.N.Y. 2003) (collecting cases).

privilege is narrowly construed, however, "because it renders relevant information undiscoverable." *In re Cty. of Erie*, 473 F.3d 418 (2d Cir. 2007); *see also Fisher v. United States*, 425 U.S. 391, 403 (1976); .

Employee communications with a company's outside counsel generally are protected as privileged. *See Upjohn*, 449 U.S. at 386-88, 394-95. The privilege also can extend to communications with employees of a subsidiary or affiliated company when there is common legal counsel and common interest. *Cary Oil Co., Inc. v. MG Refining & Marketing, Inc.,* 2000 WL 1800750, at *6 (S.D.N.Y. Dec. 7, 2000); *Music Sales Corp. v. Morris,* 1999 WL 974025, at *7 (S.D.N.Y. Oct. 26, 1999). Additionally, courts in this District have held that conversations between corporate counsel and former employees of the corporation concerning the former employee's conduct and knowledge gained during employment generally are privileged. *See, e.g.*, *Indergit v. Rite Aid Corporation*, 2016 WL 6441566, at *3 (S.D.N.Y. Oct. 31, 2016) (citing *In re Refco Inc. Securities Litigation*, 07 MDL 1902 (JSR), 08 Civ. 3065 (JSR), 08 cv 3086 (JSR), 2012 WL 678139 (S.D.N.Y. Feb. 28, 2012)); *see also Surles v. Air France*, 2001 WL 815522, at *6 (S.D.N.Y. July 19, 2001) ( "The vast majority of federal cases hold that communications between company counsel and former company employees are protected by the attorney-client privilege if they are focused on exploring what the former employee knows as a result of his prior employment about the circumstances giving rise to the lawsuit.").

For example, in *Globalrock Networks, Inc. v. MCI Communications Services, Inc.,* 09-cv-1284, 2012 WL 13028650, *4 (N.D.N.Y. May 7, 2012), the court found that defense counsel's communications with a former employee was privileged to the extent the communication related to the former employee's conduct and knowledge or communication with defendant's

counsel during his employment. It therefore denied the plaintiff's request to re-depose the former employee to learn the nature of his contacts and communications with defendant's attorney in the days immediately prior to his deposition "to the extent [plaintiff] is seeking information about the discussion as related to [the former employee's] conduct and knowledge gained during his employment with [defendant], or communications between [defense counsel] and [former employee] which are [defense counsel's] legal conclusions or opinions that may reveal [defendant's] legal strategy." *Id.* at *5 (alteration added). However, the court permitted plaintiff to re-depose the witness on whether "[defendant's] counsel had advised or informed [the former employee] of new facts or facts previously unknown to him, [as] those conversations [were] not privileged." Similarly the court held that any threats made to the former employee by defense counsel in those conversations were not privileged. *Id*. (alteration added); *see also Gioe v. AT & T Inc.,* No. CV 09-4545 LDW AKT, 2010 WL 3780701, at *2 (E.D.N.Y. Sept. 20, 2010) ("Additionally, 'communications between a corporation's counsel and former employee which are counsel's legal conclusions or legal opinions that reveal [the corporation's] legal strategy may be protected by the work-product doctrine.'" (quoting *Nicholls v. Philips Semiconductor Mfg*., No. 07 CIV.6789 (KMK) (GAY), 2009 WL 2277869, at *1 (S.D.N.Y. July 27, 2009))).

The burden of establishing attorney-client privilege is on the party asserting it. *See Sokol*, 2008 WL 3166662, at *5; *Spectrum Sys. Int'l Corp. v. Chem. Bank,* 78 N.Y.2d 371, 377 (1991). Here, the communications between Sellers' counsel and counsel for Sellers' former employees could be protected by the attorney-client privilege to the extent the communications related to the former employees' conduct and knowledge while by Sellers.

Because the Court does not have a copy of the privilege log nor any of the communications, it is unable to rule on any specific documents.

***Third Party Waiver/Common Interest Privilege***

A party may waive privilege or work product protection by voluntarily disclosing otherwise protected information to a third party or injecting protected material into a litigation. The party asserting privilege has the burden of establishing that there has been no waiver. *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 428 (S.D.N.Y. 2013). In the case of the attorney-client privilege, "if the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication over which the privilege is claimed," the privilege is waived. *Fullerton v. Prudential Ins. Co.*, 194 F.R.D. 100, 102 (S.D.N.Y. 2000) (quoting *United States v. Int'l Bhd. of Teamsters,* 961 F. Supp. 665, 673 (S.D.N.Y. 1997) (internal quotation marks omitted)); *see also Gruss v. Zwirn*, No. 09-cv-6441 (PGG) (MHD), 2013 WL 3481350, at *12 (S.D.N.Y. July 10, 2013) (citing *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993)).

The common interest doctrine and/or joint defense privilege recognizes that separate parties may share a common legal interest and protects communications shared between them in furtherance of their common interest. *See, e.g.*, *Sokol*, 2008 WL 3166662, at *5. This doctrine has been described as an exception to the rule that voluntary disclosure of privileged material waives privilege. *Id*. It also has been described as an extension of the attorney-client privilege. *U.S. v. Schwimmer*, 892 F.2d 237, 243-44 (2d Cir. 1989), *cert. denied*, 502 U.S. 810 (1991 ; *Globalrock*, 2012 WL 13028650 at *2 (citation omitted); *Gulf Islands Leasing Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 471 (S.D.N.Y. 2003).

For the common interest doctrine and/or joint defense privilege to apply, there must be an oral or written agreement that embodies "a cooperative and common enterprise towards an identical *legal* strategy." *Globalrock,* 2012 WL 13028650 at *2 (emphasis added) (citing *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 893 (S.D.N.Y. 1999)). It is paramount that each party to the agreement understand that the communications between and amongst them are provided in confidence. *United States v. Weissman,* 195 F.3d 96, 99 (2d Cir. 1999); *Bank Brussels Lambert v. Credit Lyonnais Suisse S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995) (explaining that commonality of interest is more than concurrent interest). Further, "[o]nly those communications made in the course of ongoing common enterprise and intended to further the enterprise are protected." *United States v. Weissman*, 195 F.3d at 99; *see generally Lugosch v. Congel*, 219 F.R.D. 220, 235-39 (N.D.N.Y. 2003)*.* Thus, the party invoking the common interest doctrine must show not only that it shares a common legal interest with the other party to the communication, but also that the communication was aimed at furthering that interest. *Lazare Kaplan Int'l, Inc. v. KBC Bank N.V.*, No. 11-CV-9490 (ALC), 2016 WL 4154274, at *3 (S.D.N.Y. July 22, 2016); *In re Rivastigmine Patent Litig.*, No. 05 MD 1661 (HB)(JCF), 2005 WL 2319005, at *2 (S.D.N.Y. Sept. 22, 2005) (collecting cases).

The doctrine "does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation," and requires that parties have "demonstrated cooperation in developing a common legal strategy." *Bank Brussels*, 160 F.R.D. at 447 (citations omitted). It goes without saying that business and legal interests may overlap. Where parties seek to enforce obligations grounded in a contract, communications about enforcement of contractual obligations and strategy for enforcement of those obligations would satisfy the

common interest doctrine.  *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 73 (S.D.N.Y. 2009); *see also Strougo v. BEA Assocs.,* 199 F.R.D. 515, 520 (S.D.N.Y.2001) ("A community of interest exists among . . . separate corporations where they have an identical legal interest. . . . The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial.  The fact that there may be an overlap of a commercial and legal interest for a third party does not negate the effect of the legal interest in establishing a community of interest.").  In *GlobalRock*, counsel for defense counsel communicated with a former employee to gather facts about the witness's time as an employee needed for defense of the litigation.  *Globalrock*, 2012 WL 13028650, at *1.  When the plaintiff's counsel learned of the communications while deposing the former employee, it sought disclosure of the substance of the communications.  *Id.*  The defendant objected, asserting attorney-client privilege and common interest protection.  *Id.*  Because the former employee was not a party to the lawsuit and had no financial stake in the litigation, the Court found the common interest doctrine was inapplicable.  *Id*. at *3.  However, as noted above, the Court found that the attorney-client privilege protected the communications.  *Id.* at *4.

Here, in contrast to the facts in *GlobalRock*, two of the former employees have a financial stake in the outcome of this litigation and, arguably, a common legal interest with Sellers in enforcement of the contractual obligations giving rise to that interest.  Therefore, it is possible that the common interest doctrine would protect communications between Sellers' counsel and counsel for the two former employees so long as the subject of the communications concerned enforcement of the contractual agreement in which they both have an interest in enforcing.  The Court notes that emails between Sellers' counsel and counsel for

the witnesses were labeled as being subject to the joint defense privilege, indicating that there was, in fact, an agreement or understanding between them that the communications were intended to be confidential and privileged. The Court cannot discern any common legal interest between Sellers and Ms. Victoriano, so it is unlikely that any common interest doctrine would shield those communications from disclosure; but, as discussed above, some of the communications may be protected by attorney-client privilege. Again, because the Court does not have a copy of the privilege log or any of the communications, it is unable to rule on any specific documents.

***Work Product Doctrine***

Pursuant to Rule 26(b)(3) of the Federal Rules of Civil Procedure, documents and tangible things prepared by a party or its representative in anticipation of litigation are protected under the work product doctrine. *See* Fed. R. Civ. P. 26(b)(3)(A); *Welland v. Trainer,* No. 00-cv-0738 (JSM), 2001 WL 1154666, at *2 (S.D.N.Y. Oct. 1, 2001) (holding that if a document "is created because of the prospect of litigation," it is eligible for work product protection) (quoting *United States v. Adlman,* 134 F.3d 1194, 1202 (2d Cir. 1998)); *see also Hickman v. Taylor,* 329 U.S. 495 (1947) (establishing and articulating application of the work product doctrine). The key factor in determining applicability of this doctrine is whether the documents or things were prepared with an eye toward or in anticipation of or because of the prospect of litigation. *Hickman*, 329 U.S. at 510 (holding that a party may not seek discovery of items "prepared or formed by an adverse party's counsel in the course of his legal duties" for the litigation); *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015) (protecting documents prepared in anticipation of litigation (citation omitted)); *Adlman*, 134 F.3d at 1202 (holding the

documents are protected when "the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation" (citation omitted)).

"[T]he doctrine is not satisfied merely by a showing that the material was prepared at the behest of a lawyer or was provided to a lawyer. Rather the materials must result from the conduct of 'investigative or analytical tasks to aid counsel in preparing for litigation.'" *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-cv-3923 (DRH) (AKT), 2017 WL 1233842 (E.D.N.Y. Mar. 31, 2017) (quoting *Wultz v. Bank of China Ltd.,* 304 F.R.D. 384, 393-94 (S.D.N.Y. 2015)). Thus, a court must determine if the materials would have been prepared in essentially similar form irrespective of the litigation. *Id.*, at *8 (citing *Adlman*, 134 F.3d at 1202, 1204); *Clarke v. J.P. Morgan Chase & Co.*, No. 08-cv-2400 (CM) (DF), 2009 WL 970940, at *7 (S.D.N.Y. Apr. 10, 2009). Unlike the rule for invoking attorney-client privilege, the predominant purpose of the work product to be protected need not be to procure legal advice; rather, the work product need only have been prepared or obtained because of the prospect of litigation. *Adlman*, 134 F.3d at 1202; *In re Symbol Techs*, 2017 WL 1233842, at *8.

Work product comes in two forms. Opinion work product consists of the mental impressions, conclusions, opinions, and legal theories of an attorney or other representative of a party and is given heightened protection. *Upjohn,* 449 U.S. at 400. Fact work product consists of factual material, including the results of a factual investigation. *Id.* The former type of work product is rarely if ever subject to disclosure. The latter type of work product is subject to disclosure upon a showing of substantial need and an inability to obtain the equivalent without undue hardship. *Id.*; *Hickman*, 329 U.S. at 511-512; *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183-84 (2d Cir. 2007). Courts in the Second Circuit have held that

"[a] substantial need exists where the information sought is 'essential' to the party's defense, is 'crucial' to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74–75 (S.D.N.Y. 2010) (quoting *Nat'l Cong. for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105, 110 (S.D.N.Y. 2000) (internal quotation marks omitted)). The documents must "have a unique value apart from those already in the movant's possession." *FTC v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 155 (D.C. Cir. 2015). Disclosure is warranted only when the moving party makes a strong showing of the relevance and importance of the fact work product and that "it is likely to be significantly more difficult, time-consuming or expensive to obtain the information from another source than . . . the objecting party." *In re Aggrenox Antitrust Litig.*, No. 14-md-2516 (SRU), 2017 WL 5885664 (D. Conn. Nov. 29, 2017) (citation omitted). Unlike the attorney-client privilege, work product protection is not waived merely because the material is disclosed to a third party. *See, e.g., Adlman,* 134 F.3d at 1200 n. 4 (explaining that work product may be shown to others "simply because there [is] some good reason to show it" without waiving the protection). The Supreme Court in *Hickman v. Taylor* explained that the doctrine exists to promote our adversarial system of jurisprudence and permits attorneys to work "with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." 329 U.S. at 510-511; *see also United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) (explaining that the work product doctrine exists to "promote the adversary system by safeguarding the fruits of an attorney's trial preparation from the discovery attempts of an opponent."). Therefore, protection is waived only when work product is disclosed to a third party in a manner that is inconsistent with the purpose of

the protection. See *In re Steinhardt Partners*, 9 F.3d at 235; *In re Symbol Techs.*, 2017 WL 1233842, at *9 (explaining that test for waiver is whether the disclosure that substantially increases the opportunities for potential adversaries to obtain the information results in a waiver of work product protection). The party asserting the privilege also bears the burden of demonstrating that it has not been waived. *In re Symbol Techs.*, 2017 WL 1233842, at *10; *see also John Blair Commc'ns, Inc. v. Reliance Capital Group, L.P.,* 182 A.D.2d 578, 579 (1st Dep't 1992).

Here, just as the attorney-client privilege may protect certain communications between Sellers' counsel and counsel for the three witnesses, the work product doctrine may protect them. Because the Court does not have Sellers' privilege log or any of the documents, it is unable to make a ruling at this time.

## CONCLUSION

The parties are directed to meet and confer regarding specific documents on Sellers' privilege log and, if they are unable to resolve the dispute, to write a letter to the Court requesting a conference to discuss a briefing schedule and *in camera* submissions that will be required. The Clerk of Court is respectfully requested to terminate the motion at ECF No. 168.

**SO ORDERED.**

Dated: April 23, 2019
　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　KATHARINE H. PARKER
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge