brownrudnick

DYLAN P. KLETTER
direct dial: 860.509.6557
fax: 860.509.6653
dkletter@brownrudnick.com

May 24, 2019

**VIA ECF**

Hon. Katharine H. Parker, U.S.M.J.
Daniel P. Moynihan U.S. Courthouse
500 Pearl Street, Room 1950
New York, New York 10007

**RE: Subramanian v. Lupin, Inc.**
**Docket No. 17-cv-05040-RA-KHP**

Dear Magistrate Judge Parker:

We represent Defendant and Counterclaim Plaintiff Lupin, Inc. ("Lupin"). Lupin hereby submits it opening brief in support of its motion to compel Plaintiff/Counterclaim Defendant Veerappan Subramanian and Counterclaim Defendants VGS Pharma, LLC, Mendham Holdings, LLC and Govindammal Subramanian (collectively, the "Sellers") to produce documents exchanged with third parties concerning this litigation (the "Motion").

This case arises out of Lupin's 2016 acquisition of two pharmaceutical companies - Gavis Pharmaceuticals, LLC ("Gavis) and Novel Laboratories, Inc. ("Novel," and collectively with Gavis, the "Companies") - from the Sellers (the "Transaction"). Lupin alleges, *inter alia*, that the Sellers created a fraudulent scheme to sell product outside their ordinary course to enhance their sales figures in an effort to meet the financial projections provided to Lupin.

In discovery, Lupin has issued subpoenas to three third-party individuals previously employed by the Companies - Tammy McIntyre Stefanovic, Rebecca Wilczek and Adelfa Victoriano. Ms. Stefanovic served as Gavis' president and Ms. Wilczek and Ms. Victoriano worked in sales and customer service roles for the Companies. The third parties were employed during Lupin's ownership after the Transaction, but have since departed.

When Lupin issued subpoenas to these individuals, Lupin learned that all of these individuals were represented by the same individual counsel.[1] It was revealed that the Sellers contacted these third parties and offered to pay their legal fees in connection with this dispute. Ex. B at 120-121. The Sellers have also confirmed that Sellers' counsel (i) selected the third parties' counsel; (ii) regularly communicates with the third parties' counsel regarding the third parties' testimony; and (iii) provided documents to the third parties' counsel. *Id.*; Ex. C.

On January 11, 2019, Lupin issued its Third Set of Document Requests to the Sellers seeking the communications and/or documents that the Sellers exchanged with the third parties (the "Third Requests"). *See* Ex. D. On February 11, 2019, the Sellers objected to Lupin's Third

[1] To ensure that none of Lupin's privileged communications with these individuals would be infringed, Lupin sent the third parties' counsel a letter to protect its interests regarding the same. Ex. A.





Requests. Ex. E. The Sellers have indicated that they are withholding documents responsive to Lupin's Third Requests because, according to the Sellers, the documents are protected from disclosure by the (i) attorney-client privilege; (ii) common interest doctrine; and (iii) work-product doctrine. Ex. E; Ex. F.

Lupin filed a motion to compel seeking the disclosure of these documents on February 27, 2019. [D.I. No. 168]. The Court held a conference on March 12, 2019. After that conference, the Court entered an order indicating that the parties should confer regarding specific documents on the Sellers' privilege log, and if Lupin was still seeking documents, the Court would establish a briefing schedule. [D.I. No. 187]. The Court then ordered a briefing schedule and ordered the Sellers to provide a supplemental privilege log providing additional information relating to the Sellers' privilege claims.

On May 10, 2019, the Sellers provided their supplemental privilege log to Lupin. Ex. C. The Sellers' privilege log indicates that the Sellers' counsel exchanged numerous communications and documents with the third parties' counsel concerning issues such as "Lupin's damages claims" and "Lupin's allegations in litigation." *Id.* The Sellers' belated disclosure is of upmost concern for Lupin. The Sellers' privilege log confirms that despite the Sellers' representations to the contrary, the primary nature and purpose of the withheld communications were not "to learn facts related to this legal action and which the former employee[s] [were] aware of as a result of their employment." [D.I. No. 172]. Instead, the Sellers' communications appear to be improper inquiries with these third parties relating to their roles while employed by Lupin, such as any role the third parties may have had in assisting Lupin in asserting or investigating its claims and assessing damages. Naturally, any assessment of Lupin's claims or damages would arise post-closing and it is plainly improper for the Sellers to be communicating with these witnesses and their counsel regarding those claims. As a result, Lupin requests that the Court review the documents *in camera* to assess the Sellers' privilege claims.

## I. <u>The Communications Are Not Protected by the Attorney-Client Privilege</u>

It is well-settled that it is the Sellers' burden to establish the attorney-client privilege, which "protects confidential communications between a lawyer and client relating to legal advice sought by the client." *Egiazaryan v. Zalmayev*, 290 F.R.D. 421 (S.D.N.Y. 2013).

Here, the Sellers first claim that communications between the Sellers' counsel and the third parties' counsel are protected by the attorney-client privilege because the communications were "to learn facts related to this legal action and which the former employees were aware of as a result of their employment." Ex. F. However, it is plain from the Sellers' revised privilege log that the communications are not simply communications with the third parties during their employment with the Companies while owned by the Sellers. In fact, only five of the 23 documents identified in the Sellers' privilege log contain a description that relates to the individuals' roles as former employees. Ex. C. Moreover, many of the descriptions in the Sellers' privilege log identify communications with the third parties' counsel relating to "Lupin's allegations in litigation," which the Sellers claim are privileged. Ex. C. Of course, these allegations were made post-Closing and it is entirely improper for the Sellers to make any inquiries with the third parties regarding any role they may have played in those asserting those





allegations. Such communications are plainly not privileged as courts have routinely found that communications "between a corporation's counsel 'and a former employee whom counsel does not represent, which bear on or otherwise potentially affect the witness' testimony' are *not* privileged." *Nicholls v. Philips Semiconductor Mfg.*, 2009 WL 2277869, *2 (S.D.N.Y. July 27, 2009) (denying protective order). As a result, the requested documents are not protected by the attorney-client privilege.

Further, the Sellers do acknowledge that the third parties were employed by the Companies, not the Sellers. Ex. F at 2. Lupin owns the Companies and holds the Company's privilege with respect to the Companies' pre-closing operations. *Tekni–Plex, Inc. v. Meyner & Landis*, 89 N.Y.2d 123, 133 (1996). The third parties' role in this dispute primarily relates to the Companies' sales practices, not the third parties' involvement in Lupin's acquisition, such as negotiating the Transaction. *Compare Orbit One Communs. v. Numerec Corp.*, 255 F.R.D. 98 (S.D.N.Y. 2008) (finding privilege regarding transactional counsel's communications with founder and primary shareholder of sold company regarding document integrated into final purchase agreement). Thus, the requested documents are not protected by the attorney-client privilege.

**II. <u>The Communications Are Not Protected by the Common Interest Doctrine</u>**

In addition, the Sellers cannot show that the Sellers' communications with counsel for Ms. Stefanovic and Ms. Wilczek are protected by the common-interest doctrine.[2] Again, the burden is on the Sellers to establish that the common interest doctrine applies. *Chevron Corp. v. Donzinger,* 296 F.R.D. 168, 203 (2013).

In their opposition to Lupin's motion to compel and the emails exchanged with third parties' counsel, the Sellers suggest that the Sellers and third parties had entered into common interest or joint defense agreement. However, the Sellers have since admitted that ***<u>no</u>*** common interest or joint defense agreement actually exists, but only that there was an alleged verbal understanding amongst counsel that the common interest doctrine applied. Notably, the Sellers have not supported this "verbal understanding" with any affidavits under oath.

Moreover, as this Court indicated, there must be an identical legal interest for the common interest doctrine to apply. [D.I. No. 187 at 6-9]. The sole basis for the Sellers' assertion of the common-interest privilege appears to be that Ms. Stefanovic and Ms. Wilczek may benefit monetarily if the Sellers prevail in this litigation. However, courts have routinely found that "a common commercial interest" does not establish that the common-interest privilege exists. *Fox News Network, LLC v. U.S. Dep't of Treasury*, 739 F.Supp.2d 515, 563 (S.D.N.Y. 2000); *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 472-473 (S.D.N.Y. 2003) ("A concern to ensure the payment of money is commercial in nature and does not qualify for protection under the common interest rule."). The courts' repeated findings that the common interest doctrine does not apply simply due to a common commercial interest are particularly applicable in the merger and acquisition context. Indeed, as is the case here, employees of a sold company are often entitled to certain payouts resulting from the sale. Likewise, those payouts often occur over time. Also, as present here, those employees may stay with the companies after the buyer takes control. If an entitlement to these payments establishes

[2] The Sellers concede that communications with Ms. Victoriano are not protected by the common-interest doctrine.





the common interest doctrine, then sellers could freely invoke the common interest doctrine with their former employees, who now work for the buyer. Such a rule would lead to absurd results where the buyer would be prohibited from knowing what an adverse party, *i.e.*, a seller, is discussing with its own employees about the buyer's allegations and damages claims. Not surprisingly, Sellers have offered no authority for such a proposition.

Further, Ms. Stefanovic, the only third party who has been deposed, admitted that she was wholly unaware of the common financial interest by which the Sellers stake their common interest claim. Indeed, notwithstanding the Sellers' claim of a common monetary benefit, Ms. Stefanovic testified during her deposition that [redacted] Ex. G, Stefanovic Dep. at 225:3-10. [redacted] *Id.* at 226:15-19. Thus, Ms. Stefanovic was entirely in the dark as to whether she was entitled to any funds resulting from this litigation, which, of course, would render it impossible for Ms. Stefanovic to enter into an agreement whereby she has an identical legal strategy to the Sellers.

In fact, Ms. Stefanovic was abundantly clear that her interests were separate and distinct from the interests of both the Sellers and Lupin:

[redacted]

*Id.* at 230:9-15. As a result, it is clear that the common interest doctrine does not apply to the Sellers' communications with Ms. Stefanovic.

### III. The Communications Are Not Protected by the Work-Product Doctrine

Moreover, the Sellers' counsel's communications with the third parties are not protected by the attorney work-product doctrine. Here, the Sellers claim that their communications with third parties are protected by the attorney-work product doctrine. Ex. F at 2. However, the Sellers wholly fail to meet this burden.

For example, in many instances, the Sellers claim that only the attorney work-product applies with no other privilege attaching. In fact, the Sellers make this claim in the instances where the Sellers are exchanging communications and documents relating to Ms. Victoriano and "Lupin's damages claims." Ex. C. By not claiming that the attorney-client privilege applies to these documents and communications, the Sellers are admitting that these communications do not relate to Ms. Victoriano's role with the companies while owned by the Sellers. Consequently, it is clear that the Sellers were improperly communicating with Ms. Victoriano regarding her knowledge of "Lupin's damages claims," which knowledge would have arisen during Lupin's ownership of the company. Such communications plainly infringe on Lupin's attorney-client privilege and attorney-work product. The Sellers cannot invade on Lupin's own privileges and then cloak those communications under attorney-work product doctrine. The Sellers' overstep is all the more concerning considering that after Ms. Victoriano left Lupin, she was hired by Mr. Subramanian. Again, these issues cause considerable concern for Lupin.





The Sellers' attempts to improperly infringe on Lupin's privilege and potentially influence Ms. Victoriano's testimony all under the guise of the attorney-work product doctrine is precisely the type of conduct that was rejected by this Court in *SEC v. Gupta*:

> The ability of a party to meet with a non-party witness, show him documents and ask him questions, and then mask the entire preparation session in the cloak of work product protection would serve to facilitate even the most blatant coaching of a witness if it could not be the subject of inquiry. To allow the invocation of work product protection to succeed in such circumstances would leave the party taking a deposition with no remedy to determine how, if at all, a witness's testimony was influenced, not by advice from the witness's own counsel, but by suggestions from the questioner's adversary, who, especially if possessing governmental power, was in a position to unfairly pressure the witness.
>
> 281 F.R.D. 169 (S.D.N.Y. 2012).

While the Sellers do not possess governmental power, Mr. Subramanian was Ms. Victoriano's employer at the time of the conversations in question and, therefore, had the "position to unfairly pressure the witness." As a result, the Court should reject the Sellers' claims of attorney-work product protection.

**IV. <u>Conclusion</u>**

As a result of the foregoing, Lupin requests that the Court review the documents identified on the Sellers' privilege log *in camera* and compel the Sellers to produce the documents responsive to Lupin's Third Requests. Further, Lupin requests that the Court permit Lupin to supplement this brief pending the depositions of Ms. Victoriano and Ms. Wilczek, which depositions are currently scheduled for June 3, 2019 and June 19, 2019.

Respectfully,

**BROWN RUDNICK LLP**

*<u>/s/ Dylan P. Kletter</u>*
Dylan P. Kletter