USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/13/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

VEERAPPAN SUBRAMANIAN, individually and as
Seller Representative for VGS Pharma, LLC,
Mendham Holdings, LLC, and Govindammal
Subramanian and Anu Radha Subramanian, as
NCR Seller,

                      Plaintiff and
             Counterclaim Defendants,

                   -against-

LUPIN INC.,

                          Defendant
                    Counterclaim Plaintiff.
-------------------------------------------------------------X

**MEMORDANDUM & ORDER ON MOTION TO COMPEL PRODUCTION OF EXPERT COMMUNICATIONS**

17-CV-5040 (RA) (KHP)

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff and Counterclaim Defendants Veerappan Subramanian, VGS Pharma, LLC, Mendham Holdings, LLC, and Govindammal Subramanian (collectively, "Sellers") have moved to compel Defendant and Counterclaim Plaintiff Lupin Inc. ("Lupin") to produce communications with its experts and draft expert reports relating to analysis of Lupin's potential liability and damages exposure in another lawsuit against it. (ECF No. 337.)  Lupin has refused to produce these communications and draft expert reports because it contends they are privileged and protected from disclosure under Federal Rule of Civil Procedure 26(a)(2)(B) ("Rule 26").  For the reasons set forth below, Sellers' motion is denied.

**BACKGROUND**

      The Court presumes knowledge of the background facts of this case, which arises out of Lupin's purchase of two pharmaceutical companies, Gavis Pharmaceuticals, LLC ("Gavis") and

1

Novel Laboratories, Inc. ("Novel"), from Sellers.  (*See* ECF No. 244.)   Lupin did not pay the full purchase price to Sellers at the time of the closing.  Instead, certain amounts were withheld in escrow accounts and scheduled to be released after certain dates so long as certain conditions were met.

After the sale closed, another pharmaceutical company named Euticals, SpA sued Lupin alleging that Gavis and/or Novel had infringed on its patents for certain drugs (the "Euticals Litigation").  Lupin claimed (and claims) that Sellers concealed the patent dispute from it prior to the closing of its purchase of Gavis and Novel.  Accordingly, it sought indemnification from Sellers for costs incurred from the Euticals Litigation pursuant to an indemnification provision in the purchase and sale agreement.  Lupin claimed that the amounts owed by Sellers in connection with the Euticals Litigation, together with certain other damages it suffered from other alleged fraud and contract breaches, exceeded the amounts in the escrow accounts.  Sellers brought this action seeking release of the remainder of funds held in escrow.  Lupin then counterclaimed, asserting its claims for fraud, breach of contract, and indemnification.

During the pendency of this suit, Lupin settled the Euticals Litigation.  Although Lupin communicated with Sellers about the Euticals Litigation and its settlement, Sellers did not agree with the settlement.  Sellers contend that Lupin overpaid to settle that case and therefore dispute Lupin's entitlement to the amount of indemnification Lupin seeks from them in this action.

Lupin has produced extensive information to Sellers regarding the Euticals Litigation, including all discovery exchanged in that case.  Sellers also deposed Lupin's in-house lawyer and the outside lawyer defending the Euticals Litigation to learn about Lupin's reasoning for settling

2

that action for the amount it did.  No expert discovery was conducted in the Euticals Litigation prior to settlement; however, in anticipation of such discovery, Lupin engaged experts on liability and damages and began communicating with those experts.  Importantly, Lupin's attorneys testified during discovery in this case that Lupin did not rely on any expert opinions or computations when deciding to settle the Euticals Litigation, and Lupin is not relying on the experts it retained in the Euticals Litigation for any purpose in this litigation.

Sellers argue that Lupin should be compelled to produce all communications with its experts in the Euticals Litigation and any draft reports because they are not protected by attorney-client privilege or the work product doctrine, not protected from disclosure under Rule 26, and, even if the documents are work product, Sellers have a substantial need for them.[1]

## LEGAL STANDARD AND DISCUSSION

Rule 26 provides clear guidance on the issue before the Court.  To start, Rule 26(b)(1) permits discovery of any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Given the extensive information Lupin already has provided to Sellers about the Euticals Litigation, including all discovery exchanged in that case and information concerning the

---

[1] Because I find that the documents at issue constitute protected work product, I do not address whether they are subject to the attorney-client privilege.

settlement, Sellers already have information they need to evaluate the strength and weaknesses of Lupin's defense of that action and the possible exposure it faced.  Furthermore, there is no dispute that no expert reports were ever exchanged in the Euticals Litigation and that Lupin did not rely on experts it engaged in that action in anticipation of expert discovery when deciding to settle the action and the settlement amount.   Its attorneys testified that the company did not rely on expert advice or opinions when settling that action.  Thus, any communications and draft expert reports with the experts in that case are irrelevant to this action.  Even if they were relevant, the production of this additional information is not proportional to the needs of this case given the extent of discovery already provided to Sellers regarding the Euticals Litigation.  Sellers have more than enough information to evaluate the settlement of the Euticals Litigation and make arguments about whether Lupin overpaid to settle that action.  Case law supports the Court's conclusion on relevance, particularly when Lupin's witnesses have testified that they did not rely on any advice from the experts when settling the Euticals Litigation.  *Cf. Deutsche Bank Trust Co. v. Tri-Links Inv. Trust*, 837 N.Y.S.2d 15, 18 (1st Dep't 2007) ("A party suing to enforce an alleged right to indemnification for the costs of defending and settling a prior lawsuit does not thereby, without more, place at issue the party's privileged communications with counsel concerning the prior lawsuit and settlement."); *see also Kleeberg v. Eber*, No. 16-cv-9517 (LAK) (KHP) 2019 WL 2085412 (S.D.N.Y. May 13, 2019) (adopting *Deutsche Bank* and denying motion to compel attorney-client communications); *AngioDynamics, Inc. v. Biolitec, Inc.*, 2010 WL 11541926 (N.D.N.Y. May 25, 2010) (rejecting argument that attorney-client communications were placed at issue by seeking indemnification for third-party claim).

Next, Rule 26(a)(1)(A)(iii) requires a party to provide a computation of each category of damages claimed, as well as "documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based."  As noted above, Lupin has provided nonprivileged documents and information on which it is relying to support the amount of indemnification it seeks from Sellers in connection with the Euticals Litigation.

Rule 26's provisions pertaining to expert disclosures set forth the rules for the litigation in which the expert is retained.   Lupin has engaged damages experts in this action and complied with the applicable disclosure requirements.  Yet, Sellers contend that Lupin also should be required to disclose information about its experts in another litigation—the Euticals Litigation—beyond what it is required to disclose about its experts in this case.  This is not correct.  Rule 26(b)(4)(D), which sets forth the rules regarding consultative experts, protects from disclosure "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."  The experts hired for the Euticals Litigation are similar to consulting experts insofar as they never testified at trial and were never engaged by Lupin to testify in this trial.  Rule 26 provides extensive protection for such experts, even more protection than for work product, which can be ordered disclosed upon a showing of substantial need.  Specifically, a party may be required to produce communications and information about consultative experts only in "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."[2]

---

[2] The only other exception relates to disclosures in connection with medical exams under Rule 35(b) and is not applicable.  Fed. R. Civ. P. 26(b)(4)(D)(i).

Fed. R. Civ. P. 26(b)(4)(D)(ii).  Sellers have not met the exceptional circumstances showing.  To the contrary, Lupin already provided Sellers with extensive information upon which Sellers can evaluate the Euticals Litigation settlement and settlement amount, and the Sellers were afforded the opportunity to engage experts in this action to opine on same.

Even if the information Sellers seek were covered by Rule 26(b)(4)(C), which it is not, Sellers would not be entitled to the information.  Rule 26(b)(4)(C) protects all communications between a party's attorney and its testifying expert witness, "regardless of the form of communications," except communications relating to (1) the expert's compensation for work before and during the trial and (2) facts, data, and assumptions provided by the attorney to the expert that the expert relied on in forming the opinions to be expressed.  In this case, the experts in the Euticals Litigation never made final opinions, which would have been expressed in final expert reports and testimony.  Thus, as a technical matter, there was nothing produced in the Euticals Litigation under this Rule.  In any event, the documents and data produced in the Euticals Litigation and that would have been available to the experts in that litigation to form an opinion was already produced in this action.  Therefore, Sellers have facts and data upon which an expert could have relied in forming an opinion in the Euticals Litigation (i.e., part of what is required to be disclosed under Rule 26(b)(4)(C)).

Finally, Rule 26(b)(3) protects documents and tangible things prepared by a party or its representative in anticipation of litigation under the work product doctrine.  *See* Fed. R. Civ. P. 26(b)(3)(A); *Welland v. Trainer,* No. 00-cv-0738 (JSM), 2001 WL 1154666, at *2 (S.D.N.Y. Oct. 1, 2001) (if document "is created because of the prospect of litigation" it is eligible for work product protection (quoting *United States v. Adlman,* 134 F.3d 1194, 1202 (2d Cir. 1998))); *see*

*also Hickman v. Taylor*, 329 U.S. 495 (1947) (establishing and articulating application of the work product doctrine). The key factor in determining applicability of this doctrine is whether the documents or things were prepared "with an eye toward" or "in anticipation of" or "because of the prospect of litigation." *Hickman*, 329 U.S. at 510-11; *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015); *Adlman*, 134 F.3d at 1202.

Work product comes in two forms. Opinion work product consists of the mental impressions, conclusions, opinions, and legal theories of an attorney or other representative of a party and is given heightened protection. Fact work product consists of factual material, including the results of a factual investigation. This latter type of work product is subject to disclosure upon a showing of substantial need and an inability to obtain the equivalent without undue hardship. *Upjohn Co. v. United States,* 449 U.S. 383, 400; *Hickman*, 329 U.S. at 511; *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183-84 (2d Cir. 2007); *Adlman*, 134 F.3d at 1204.

Courts in the Second Circuit have held that "[a] substantial need exists 'where the information sought is "essential" to the party's defense, is "crucial" to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues.'" *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74-75 (S.D.N.Y. 2010) (quoting *Nat'l Cong. for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105, 110 (S.D.N.Y. 2000)). The documents must "have a unique value apart from those already in the movant's possession." *FTC v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 155-56 (D.C. Cir. 2015). Disclosure is warranted only when the moving party makes a strong showing of the relevance and importance of the fact work product and shows "it is likely to be significantly more difficult,

7

time-consuming or expensive to obtain the information from another source." *In re Aggrenox Antitrust Litig.*, No. 14-md-2516 (SRU), 2017 WL 5885664 (D. Conn. Nov. 29, 2017) (internal citations omitted).

In this case, there is no question that Lupin's attorneys' communications with its experts in the Euticals Litigation, including any draft reports exchanged, were work product. But for that litigation, the communications would never have occurred. The communications were solely had because of the litigation.

To the extent Sellers argue they have a substantial need for the communications and any draft reports, their argument is unpersuasive. First, the information is not relevant for the reasons set forth above. Second, the information is certainly not essential to Sellers' defense of the indemnification claim in light of the substantial discovery they already have received about the Euticals Litigation. Sellers argue that, to obtain indemnification, Lupin has the burden of proving its actions in defending and settling the Euticals Litigation were taken in good faith, that it used commercially reasonable efforts to mitigate damages, and that Sellers unreasonably withheld their consent to settle. Sellers argue that Lupin has refused to provide a basis for the amount of the settlement or documents. They further ague that if the experts had given opinions that Lupin's exposure was less than what Lupin believed at the time of settlement, those opinions could be used to attack Lupin's judgment as to the appropriate settlement amount. But Sellers already have information necessary to attack Lupin's decision to settle and the settlement amount. They can point out that Lupin did not rely on experts in reaching the amount. They can point out the evidence that Lupin gathered and produced in the Euticals Litigation supporting its defenses. They can provide their own expert witness in this litigation

to evaluate the exposure in the Euticals Litigation.  At the end of the day, a business's decision to settle a litigation is based on many factors that include but are not limited to the relative strengths and weaknesses of the claims and defenses, the litigation costs compared to potential exposure, the litigation costs compared to the settlement amount, business considerations related to the patents at issue in that litigation, the company's overall finances, public relations, tax considerations, and the like.  Lupin is prepared to prosecute its indemnification claim based on the information it already has produced, and Sellers are fully able to argue, as they already have, that the evidence does not support Lupin's claimed indemnification damages flowing from the Euticals Litigation.  Thus, Sellers do not have a substantial need for the communications and any draft reports.

## CONCLUSION

For the reasons discussed above, Sellers motion to compel is denied.

**SO ORDERED.**

Dated: August 13, 2020
      New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge