UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 10/15/2020
```

---

VEERAPPAN SUBRAMANIAN
*individually and as Seller Representative for*
*VGS Pharma, LLC, Mendham Holdings, LLC,*
*and Govindammal Subramanian and Anu*
*Radha Subramanian, as NCR Seller*,

No. 17-CV-5040 (RA)

Plaintiff,

ORDER ADOPTING REPORT AND
RECOMMENDATION

v.

LUPIN INC.,

Defendant.

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Veerappan Subramanian, individually and as Seller Representative for VGS Pharma, LLC, Mendham Holdings, LLC, and Govindammal Subramanian and Anu Radha Subramanian, as NCR Seller (collectively, "Sellers"), brought this action against Defendant Lupin, Inc., asserting claims for breach of contract and declaratory judgments arising out of Lupin's 2016 acquisition of two pharmaceutical companies from Sellers pursuant to a Purchase and Sale Agreement (the "PSA"). Lupin, in turn, asserted counterclaims against Sellers for breach of contract and fraud, as well as for a declaratory judgment. On January 8, 2020, Sellers moved for partial summary judgment on Lupin's counterclaims. Dkt. 285. On August 21, 2020, Magistrate Judge Katharine Parker, to whom this matter has been referred, issued a Report and Recommendation (the "Report") recommending that the Court grant Sellers' motion with respect to Lupin's breach of contract counterclaim to the extent that it seeks lost profits and lost

opportunity damages, as well as with respect to Lupin's fraud claim to the extent it seeks consequential damages in the form of unrealized profits, but deny the remainder of Sellers' motion for partial summary judgment. *See* Dkt. 352. Sellers filed objections to the Report on September 4, 2020, Dkt. 355, and Lupin responded on September 18, 2020, Dkt. 367.

The Court assumes the parties' familiarity with the relevant facts, as outlined in the Report. After reviewing the Report and Sellers' objections, the Court adopts Judge Parker's well-reasoned recommendation in its entirety. Sellers' motion for partial summary judgment is therefore granted in part and denied in part.

## LEGAL STANDARDS

When a magistrate judge has issued a report and recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made [therein]." 28 U.S.C. § 636(b)(1). "When a timely and specific objection to a report and recommendation is made, the Court reviews *de novo* the portion of the report and recommendation to which the party objects." *Razzoli v. Federal Bureau of Prisons*, No. 12 Civ. 3774 (LAP) (KNF), 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014) (citing 28 U.S.C. § 636(b)(1) and Fed R. Civ. P. 72(b)(3)); *see also Time Square Food Imports LLC v. Philbin*, No. 12 Civ. 9101 (PAE) (HBP), 2014 WL 521242, at *2 (S.D.N.Y. Feb. 10, 2014) (requiring objections to be "specific and clearly aimed at particular findings in the magistrate judge's report") (internal quotation marks and citation omitted). "To accept those portions of the report to which no timely objection has been made, however, 'a district court need only satisfy itself that there is no clear error on the face of the record.'" *Razzoli*, 2014 WL 2440771, at *5 (quoting *Wilds v. United Parcel Serv.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)).

Moreover, "[w]hen a party makes only conclusory or general objections, or simply

reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002); *see also Crum v. Billingsby*, No. 11 Civ. 2979 (GBD) (RLE), 2014 WL 2855030, at *1 (S.D.N.Y. June 20, 2014) ("[W]here the objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [motion], reviewing courts should review a report and recommendation for clear error.") (citation omitted); *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07 Civ. 6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) ("To the extent . . . that the party . . . simply reiterates the original arguments, the Court will review the Report strictly for clear error.").  "A magistrate judge's decision is clearly erroneous only if the district court is 'left with the definite and firm conviction that a mistake has been committed.'" *Stenson v. Heath*, No. 11-CV-5680 (RJS) (AJP), 2015 WL 3826596, at *2 (S.D.N.Y. June 19, 2015) (citation omitted).

## DISCUSSION

### I.    Sellers' Objections

Although Sellers make several objections to the Report, the majority of these objections consist of arguments that Sellers previously raised before Judge Parker—and which Judge Parker specifically considered—and thus are reviewed only for clear error. *See Walker*, 216 F. Supp. 2d at 292.  For instance, Sellers argue that the Report "failed to enforce" the "specific remedy" that Lupin negotiated, which "required Lupin to seek an adjustment to working capital in order to address the temporary impact of Sellers' sales promotions in the months prior to closings," and "to do so within ninety days after closing if Lupin wished to object to any such sales as non-ordinary-course."  Obj. at 1.  In connection with this, they contend that the Report "impermissibly treats compliance with this negotiated remedy in Section 2.3 as purely optional," Obj. at 6-7, and further,

that by "only address[ing] the issue of exclusive remedies under the Agreement," the Report failed to "address Sellers' arguments that the language negotiated in Section 2.3 of the Third Amendment was in fact the agreed upon resolution of any dispute over whether there was a breach of the ordinary course representations in [] Sections 4, 6, or 7 of the PSA," Obj. at 6.  The Report, Sellers argue, essentially "allow[ed] Lupin to ignore the specific contract language that it negotiated," and, as such, "renders Section 2.3 [of the PSA] meaningless."  Obj. at 8.  As Lupin points out, however, Sellers previously raised this very argument in their motion papers.  Specifically, Sellers argued in their summary judgment papers that Section 2.3(b) was a mandatory and exclusive remedy under the PSA.  *See* Sellers' MSJ at 10-13, 15.  Rejecting this argument, Judge Parker rightly found that Section 2.3(b) of the PSA was not an "exclusive remedy" with respect to these breach of contract claims, but rather, that Lupin was entitled to pursue its contract claims under Article IX of the PSA as well.  *See* Report at 24 ("[N]either Sections 2.3 nor 9.3(a) state that the closing adjustment process is the exclusive avenue of relief for contract breaches."); Report at 28 (concluding that "the PSA does not limit Lupin's avenues in seeking relief for breaches of representations and warranties, including breaches related to Article II and the post-closing adjustment process").  The Court finds no clear error in this conclusion.

As another example, Sellers argue that the Report erred in concluding that Lupin reasonably relied on Sellers, including by determining that Lupin was entitled to rely on Seller's warranty that they did not engage in any non-ordinary-course sales.  *See* Obj. at 3, 21.  Sellers further contend that Lupin's "purported reliance on verbal representations regarding the extent of the Buy Ins" is "inconsistent with its contractual disclaimers and therefore a claim based on such alleged reliance cannot be permitted to proceed."  Obj. at 13.  According to Sellers, "the alleged fraudulent misrepresentations or omissions [at issue here] are oral statements and financial

disclosures by Sellers' representatives made after Lupin had already executed the PSA which set the purchase price and in which Lupin contractually disclaims reliance on such statements," Obj. at 3, and thus, Lupin cannot be said to have reasonably relied on such alleged misstatements. But, again, Sellers previously raised this argument in their motion papers, arguing that Lupin could not claim reasonable reliance on Sellers' fraud in light of the purported disclaimers of reliance contained in the PSA, *see, e.g.*, Sellers' MSJ at 16-17, and the Report carefully considered and expressly rejected this argument, *see* Report at 39 ("Because Lupin did not disclaim reliance on the ordinary course warranties in the contract, the disclaimers are not helpful to Sellers in their argument that Lupin did not rely on them."); Report at 39-40 ("In sum, the very specific language of the disclaimers compared to the very specific nature of the warranties in the PSA and the particular facts of this case do not preclude a finding of reliance."). Judge Parker did not err in so concluding.[1]

Sellers also take issue with the fact that the Report allegedly "failed to mention" certain of Sellers' arguments and/or "overlooked" certain of the evidence in the record. Sellers contend, for instance, that the Report "overlook[ed]" the "undisputed evidence" that "Lupin had access to all of the information necessary to conduct an investigation but just decided not to do so." Obj. at 3-4. To the contrary, however, Judge Parker considered Sellers' arguments with respect to Lupin's investigation and the relevant evidence, *see, e.g.*, Report at 40-44, but then concluded that, "[b]ased on the record, Sellers have not met their burden with regard to this element of Lupin's fraud claim," especially since "[t]he extent of Lupin's pre- and post-acquisition diligence is not clear from the

---

[1] With respect to Lupin's fraud claims, Sellers also object that the Report allegedly failed to hold Lupin to the applicable standard, i.e., that "a sophisticated party in a business transaction has a heightened duty to investigate alleged misrepresentations, and that in opposing summary judgment with respect to a fraud claim, such a sophisticated party must present clear and convincing evidence so as to make any inference of fraud unequivocal." *See* Obj. at 10. But this is precisely the standard articulated by the Report with respect to these claims, *see* Report at 33-34, and the Court finds no error in the manner in which Judge Parker applied this standard to the instant case.

present record and the parties dispute the degree of Lupin's access to information," Report at 42. Nor does the Court find any merit to Sellers' assertions that the Report "failed to mention" certain of Sellers' other arguments.  Indeed, a magistrate judge need not mention every single assertion raised by a party when ruling on its motion.  *See Kalra v. City of New York*, No. 05 Civ. 1563 (RJS) (JCF), 2009 WL 857391, at *5 (S.D.N.Y. Mar. 31, 2009) (noting that the magistrate judge's "'failure' to address—page by page, citation by citation—every argument advanced [by] Defendants[] . . . did not, in and of itself, constitute a clearly erroneous application of the law").

Sellers further contend that the Report failed to analyze and/or correctly apply certain case law.  These objections are also unpersuasive.  Sellers argue, for example, that the Report failed to analyze *Impact Invs. Colorado II, LLC v. Impact Holding, Inc.*, No. 4323-VCP, 2012 WL 3792993 (Del. Ch. Aug. 31, 2012), *see* Obj. at 9—a case that Sellers did not cite or rely on in either their initial motion or reply brief.  The Court discerns no error in Judge Parker's decision not to cite or rely on this particular out-of-state case.  Sellers also object that the Report failed to analyze *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206 (S.D.N.Y. 2007), *aff'd*, 354 F. App'x 496 (2d Cir. 2009). *See* Obj. at 12.  Sellers, however, only cited *Century Pac.* for general propositions, such as the "'clear and convincing' standard of proof required on summary judgment." *See* Sellers' MSJ at 8, 14, 16; Sellers' Reply at 6.  The Report cites *Century Pac.* for this very proposition. *See* Report at 17 ("In the case of a fraud claim, New York law requires each element of fraud to be established by 'clear and convincing evidence,' both for summary judgment and trial purposes.").  The Court cannot discern any error committed by Judge Parker with respect to this case.  And although Sellers contend that the Report erroneously relied on other case law, such as *Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 700 F. Supp. 127 (S.D.N.Y. 1988), and *ACLI Int'l Commodity Servs., Inc. v. Banque Populaire Suisse*, 609 F. Supp. 434 (S.D.N.Y. 1984), in analyzing the

reasonable reliance requirement, *see* Obj. at 10, the Report did no such thing.  Indeed, as Lupin points out, these two cases are cited only in the Report's "Legal Standard" section, *see* Report at 17-18, and are not actually relied on—or cited at all—in the context of its reasonable reliance discussion, *see* Report at 33-44.

With respect to Lupin's fraud claims, Sellers argue further that the Report "ignores" the Second Circuit's holding in *Galli v. Metz*, 973 F.2d 145 (2d Cir. 1992), Obj. at 14, and that it "fail[ed] to follow" the Second Circuit's decision in *Grumman Allied Indus. v. Rohr Indus.*, 748 F.2d 729 (2d Cir. 1984), Obj. at 16.  Neither of these objections have merit.  First, although Sellers contend that the Report ignored *Galli*—a breach of warranty case they cited only in passing in their reply brief, *see* Sellers' Reply at 5—they do not actually explain how it did so.  Moreover, Sellers cited *Galli* simply for the proposition that "[w]here a buyer closes on a contract in the full knowledge and acceptance of facts disclosed by the seller which would constitute a breach of warranty under the terms of the contract, the buyer should be foreclosed from later asserting the breach," *see* Sellers' Reply at 5—a proposition which the Report undoubtedly considered, *see, e.g.*, Report at 33-34, 40-44.  Nor did the Report err in its discussion of *Grumman*.  Contrary to Sellers' contention, the Report did not fail to follow this case, but rather, appropriately cited it and, upon review, determined that it was distinguishable from the instant action, and that a finding of reliance was thus not precluded.  *See* Report at 35, 39-40, 43-44.

Sellers further object that the Report erred in relying on the Second Circuit's decision in *Merrill Lynch v. Allegheny Energy, Inc.*, 500 F.3d 171 (2d Cir. 2007), because, according to them, that case "does not support lost value damages in this case."  *See* Obj. at 24.  Relatedly, Sellers object that the Report "virtually ignore[d]" their argument that "Lupin's valuation damages (its contention that the company was worth less when it purchased it than what it paid)[] are

unrecoverable in this case because such 'loss of value' could not have been caused by or a direct result of the alleged fraud in this case where Lupin could not have refused to close if it had learned that the sales that resulted from the Buy Ins were $6.2 million." *See* Obj. at 21.  The Report, however, directly addressed this argument—an argument that Sellers previously raised, *see, e.g.*, Sellers' Reply at 8-9—and did not err in citing *Merrill Lynch v. Allegheny Energy, Inc.*, 500 F.3d 171 (2d Cir. 2007).  In *Merrill Lynch*, the Second Circuit explained that "fraud damages represent the difference between the purchase price of the asset and its true value, plus interest, generally measured as of the date of sale." *See Merrill Lynch*, 500 F.3d at 183.  Sellers are therefore incorrect to claim that the Report erred by citing this case to support its conclusion that Lupin's theory of damages—based on "the difference between the purchase price of the asset and its true value, plus interest, measured at the closing date"—are "permitted, if proven." *See* Report at 45; *see also Merrill Lynch*, 500 F.3d at 183 (explaining that, if Allegheny proves Merrill Lynch made certain misrepresentations, "it may show that it has acquired an asset at a price that exceeded its true value," and if its "fraud claim [is found to be] otherwise valid, damages should be awarded [to] Allegheny to the extent that the purchase price overstated [the asset's] value on the date of sale as a result of Merrill Lynch's misrepresentations and omissions").

Finally, Sellers object to the Report's conclusions regarding the Methergine-related damages, arguing that the Report failed to recognize that "Lupin's second form of methergine related damages is also a claim for lost profits" and therefore should also be barred as impermissible lost profits damages. *See* Obj. at 24-25.  Again, however, this is an argument that Sellers previously raised to Judge Parker, and which Judge Parker carefully considered.  As Lupin notes, Judge Parker "parsed through Lupin's damages claims related to Methergine and found that 'Lupin has expressly described' how its increased inventory costs related to Methergine are

connected to the Sellers' fraud." *See* Resp. at 25. Thus, the Report found, the resulting Methergine-related damages are permissible. *See* Report at 47. The Court finds no clear error in this conclusion either.

The Court has reviewed the remainder of Sellers' objections and, in sum, finds no error—clear or otherwise—in Judge Parker's well-reasoned and thorough Report. *See Walker*, 216 F. Supp. 2d at 292. For these reasons, the Report is adopted in full.

## II.    The Parties' Additional Sealing Requests

As noted in the Court's September 29, 2020 Order, the parties previously sought to file a number of documents under seal in connection with Sellers' motion for partial summary judgment. *See* Dkt. 372. While the Court granted the parties' sealing requests as to most of these documents, it denied them with respect to filing the PSA entirely under seal, as well as filing redacted versions of Sellers' memorandum of law, Lupin's opposition brief, and Sellers' objections to the Report. *See id.* at 5. Thereafter, the parties filed an unredacted version of the PSA on the public docket. *See* Dkts. 373-1, 379-1.[2] In addition, Sellers have since sought to file their memorandum of law, and Lupin their opposition brief, with more narrowly-tailored redactions. *See* Dkts. 376, 381.

The Court has reviewed the proposed redactions to these two briefs, and finds them to be narrowly tailored to protect compelling interests, namely "Lupin's confidential information concerning the launch strategy of a pharmaceutical product," which "ha[s] not otherwise been made public in this litigation," nor referenced in the Report. *See* Dkt. 376 at 1; *see also, e.g.*, *Playtex Prod., LLC v. Munchkin, Inc.*, No. 14-CV-1308 (RJS), 2016 WL 1276450, at *11 (S.D.N.Y. Mar. 29, 2016) (sealing portions of parties' briefing and exhibits submitted in connection with summary judgment motion because proposed redactions were "narrowly tailored"

---

[2] Lupin filed a full unredacted version of the PSA, Dkt. 379-1, while Sellers filed only unredacted excerpts of the Agreement, Dkt. 373-1.

and because "the likely harm [plaintiffs] may suffer if [this information was] revealed to their competitors outweigh[ed] the presumption of public access"); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (granting party's requests to file summary judgment briefing and supporting papers with "proposed redactions [that were] generally limited to specific business information and strategies, which, if revealed, 'may provide valuable insights into a company's current business practices that a competitor would seek to exploit'") (citation omitted). This conclusion is bolstered by the fact that the specific portions of their briefs that the parties now seek to redact do not pertain to "matters that directly affect[ed] [the Court's] adjudication" on the instant Order adopting the Report. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). Thus, the parties' requests to file the memorandum of law and opposition brief in their current redacted forms are granted.

Sellers did not, however, refile their objections to the Report with more narrowly-tailored redactions, nor did they mention their objections in their October 2nd letter motion to seal. *See* Dkt. 381. The Court thus presumes that Sellers no longer seek to redact portions of their objections. Accordingly, Sellers shall file an unredacted version of their objections on the docket no later than October 19, 2020.

**CONCLUSION**

For the foregoing reasons, the Court adopts the Report and Recommendation in its entirety. Accordingly, Sellers' motion for partial summary judgment is granted with respect to Lupin's breach of contract counterclaim to the extent that it seeks lost profits and lost opportunity damages, as well as Lupin's fraud claim to the extent it seeks consequential damages in the form of unrealized profits, but denied as to the remainder of the motion.  Additionally, the parties' requests to file the memorandum of law and opposition brief in redacted form are granted, but Sellers' objections to the Report shall be filed on the public docket in unredacted form no later than October 19, 2020.  The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 285, 376, and 381.

SO ORDERED.

Dated:     October 15, 2020
           New York, New York

_____
RONNIE ABRAMS
United States District Judge